
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BRIAN BERKENBILE** | § | Case No. 12-41969 |
| xxx-xx-8820 | § | |
| | § | |
| Debtor | § | Chapter 7 |
| MICHAEL BOYLE | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 12-4153 |
| | § | |
| BRIAN BERKENBILE | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, Michael Boyle (the "Plaintiff") seeking a determination of whether an alleged debt owed to him by the Defendant-Debtor, Brian Berkenbile ("Berkenbile" or the "Defendant"), is dischargeable, the Court issues the following findings of fact and conclusions of law. The Plaintiff contends that the debt is non-dischargeable under the alternative grounds set forth in 11 U.S.C. §523(a)(2)(A), §523(a)(4) and §523(a)(6). After the trial, the Court took the matter under advisement. This decision disposes of all issues pending before the Court.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

# FINDINGS OF FACT

1. Plaintiff, Michael Boyle, was approached by the Defendant, Brian Berkenbile, to advance certain funds for the purchase of mobile home properties from HUD.

2. Under the parties' oral agreement, the Plaintiff would advance the acquisition costs for each property,[2] the Defendant would utilize his experience in mobile home sales to procure a buyer for each property.

3. The parties agreed that, upon the sale of each such property, the Plaintiff would recoup his purchase price and then the parties would split any realized profit. If there was a significant delay in the sale of a particular property, the Plaintiff would realize a larger, but unspecified, share of the net sales proceeds.

4. After a couple of successful sales whereupon the parties split the net proceeds as agreed, the Defendant requested permission of the Plaintiff on one occasion to retain all of the net proceeds from a particular sale in order to procure additional properties.

5. On that one occasion, the Plaintiff granted permission for the Defendant to retain and to reinvest the net sales proceeds realized from the sale of a particular property.

6. However, the Defendant began to conceal the existence of subsequent sales and began to retain the proceeds of those subsequent sales without the knowledge or permission of the Plaintiff.

7. The Defendant failed to apprise the Plaintiff as to when certain properties were purchased.

8. The Defendant failed to utilize the Plaintiff's funds in the way that the parties had agreed.

---

[2] The properties, once acquired with Plaintiff's funds, were placed into the name of Arcadia Custom Homes, L.P., for whom the Defendant worked, ostensibly in order to avoid additional insurance costs while the properties were "in inventory" by keeping them as listed properties under Arcadia's blanket insurance policy. The entity in which the acquired properties should have been held and the degree to which the Plaintiff acquiesced to the procedure actually used in the early days of the relationship is unclear.

9. The Defendant utilized significant portions of the sale proceeds realized from the sale of certain properties without the permission of the Plaintiff.

10. After a significant period of time with no investment recoupment nor profit distribution having been tendered by the Defendant, the Plaintiff demanded an accounting of funds and/or properties by the Defendant.

11. Due to an alleged loss of a laptop computer and despite the demand of the Plaintiff, the Defendant was unable to account through proper recordkeeping for the disposition of the money forwarded to him by the Plaintiff or to trace the sums to the acquisition of particular properties.

12. The Defendant claimed that there were only four properties remaining in his possession that were acquired with, or were otherwise attributable to, the Plaintiff's funds. They were:

    (a) 8022 Kelton Drive, Crandall, Texas;
    (b) 8011 Kelton Drive, Crandall, Texas;
    (c) 9258 Jessie Way, Crandall, Texas; and
    (d) 9245 Diamond Avenue, Kaufman County, Texas (the "Properties").[3]

13. With no information from the Defendant from which to verify the disposition of any of the prior properties, the Plaintiff reluctantly accepted that the Properties were the sole remaining properties that had been originally acquired with the Plaintiff's funds or subsequently acquired with improperly-retained proceeds.

14. In an effort to prevent the Defendant from conveying the Properties and keeping the proceeds without his knowledge, the Plaintiff demanded that the Defendant convey title to the Properties to him.

15. Title to the Properties was conveyed to the Plaintiff in the spring of 2009.

16. The conveyance of the Properties to the Plaintiff was a means by which the Plaintiff sought to ensure the recovery of the sums he had previously tendered to the Defendant.

17. At the time of each such conveyance, unbeknownst to the Plaintiff, each of the Properties was already encumbered by a deed of trust lien held by Legacy

---

[3] ¶ 3 of the Stipulation of Agreed Issues of Fact set forth in the approved Joint Pre-Trial Order entered in this adversary proceeding on September 23, 2013. The existing

      Housing, Ltd. that had been granted by the Defendant.

18. In an effort to address the outstanding indebtedness due and owing to the Plaintiff as a result of his repeated failures to account for the acquisition of properties with the Plaintiff's funds and the disposition of each such property, the Defendant executed a promissory note in favor of the Plaintiff on or about February 26, 2010, in the amount of $400,000 (the "2010 Note").[4]

19. The 2010 Note simply memorialized the indebtedness owed by the Defendant to the Plaintiff that had previously accrued.

20. The 2010 Note was accompanied by a Schedule A which listed the Properties and a "Threshold Amount" applicable to each such property.[5]

21. The 2010 Note required the Defendant to address the underlying indebtedness through alternative means.[6]

22. The 2010 Note required the Defendant to pay $4,000 on the 1st day of each month, commencing on March 1, 2010.

23. The 2010 Note also contained the following payment requirement:

> If, as and when [Defendant] shall sell any one or more of the properties (the "Properties") listed on Schedule A attached hereto and made apart (sic) hereof for all purposes, all net proceeds realized for [Plaintiff] from a sale of any of the Properties in excess of the minimum threshold amount (the "Threshold Amount") for each of the Properties as identified on Schedule A shall be applied by [Plaintiff] as a credit against the outstanding principal balance of this Note.

---

[4] Ex. 4. The evidence contains no specific explanation as to how the amount of the note was derived.

[5] Schedule A included four properties other than the four specifically designated as the "Properties" in these findings. The disposition of such properties is extraneous to the issues presented in this case.

[6] The 2010 Note was accompanied by a Loan Agreement which, among other things, imposed certain reporting requirements upon the Defendant. See Ex. 5.

24. The term "Threshold Amount" was not defined in the 2010 Note; however, the Plaintiff established by a preponderance of the evidence that the Threshold Amount was the amount required to be paid to the Plaintiff under the original agreement as the Plaintiff's recoupment of his original investment amount as to each property.

25. Thus, no part of any Threshold Amount pertaining to each of the four Properties would need have been addressed in the payment options set forth in the 2010 Note since the Defendant had no legal right or entitlement to any portion of the recoupment amount and, thus, no portion of that amount could be properly credited to him on the Note indebtedness.

26. However, the Defendant did possess some right to payment (originally one-half) of some percentage of the net proceeds under the original agreement.

27. The 2010 Note states that the Plaintiff is entitled to any amount *in excess of* the Threshold Amount designated in Schedule A.

28. Thus, under the 2010 Note, the Defendant agreed to apply any portion of the net sales proceeds to which he otherwise might have been entitled toward the satisfaction of the $400,000 indebtedness evidenced by the 2010 Note.

29. The Defendant made only one $4,000 payment under the 2010 Note.

30. The 2010 Note was subsequently renewed and extended a year later in March 2011, with accrued interest of $20,000 added to the principal balance.[7]

31. As the Defendant's financial problems worsened, the Plaintiff soon learned of the lien held by Legacy Housing, Ltd. in each of the Properties when Legacy posted each of the Properties for foreclosure.

32. In 2011, Legacy Housing, Ltd. foreclosed upon each of the Properties that the Defendant had procured with funds from the Plaintiff and that had been subsequently conveyed to the Plaintiff.

33. On September 23, 2011, the Plaintiff filed a lawsuit against the Defendant and other parties before the 298th Judicial District Court in and for Dallas County, Texas.

---

[7] See Ex. 8.

34. While the state court lawsuit was still pending, on July 24, 2012, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.

35. The claim of the Plaintiff was properly scheduled as an unsecured claim in an unknown amount in the Defendant's bankruptcy case.[8]

36. On October 17, 2012, the Plaintiff filed a general unsecured claim in the Defendants' underlying chapter 7 case in the amount of $181,660.80.[9]

37. The Plaintiff's claim is based on the aggregate of the Threshold Amounts of the Properties as reflected on Schedule A to the 2010 Note [$178,258.15], reduced by certain applied credits [$3,797.35], for a total direct damage claim of $174,460.80, together with a claim for attorney's fees in the asserted amount of $7,200.00.[10]

38. The Defendant did not actually contest the legitimacy of the underlying indebtedness owed by him to the Plaintiff pertaining to the Properties.

39. The indebtedness is still due and owing by the Defendant to the Plaintiff.

40. The Plaintiff timely filed his Complaint Objecting to the Discharge of a Debt on October 17, 2012, seeking to except his claim from the scope of any discharge granted to the Defendant.

41. The Plaintiff contends that his claim is non-dischargeable as a debt obtained by false pretenses, a false representation or actual fraud under 11 U.S.C. §523(a)(2)(A), as an embezzlement under 11 U.S.C. §523(a)(4), or as a debt for a willful and malicious injury under 11 U.S.C. §523(a)(6).

42. The Plaintiff has failed to establish by a preponderance of the evidence that the indebtedness owed to him by the Defendant for which he has sued was procured under circumstances constituting actual fraud.

43. The Plaintiff has failed to establish by a preponderance of the evidence that, as of the time each advance of money was made, the Defendant made representations to

---

[8] Schedule F filed by the Debtor on August 14, 2012 [dkt #6] in case no. 12-41969.

[9] ¶ 3(i) of the Stipulated Statements of Fact.

[10] See Ex. 21.

the Plaintiff that such Defendant knew were false at the time that such representations were made.

44. The Plaintiff has failed to establish by a preponderance of the evidence that, as of the time each advance of money was made, the Defendant made false representations to the Plaintiff with the intention and purpose of deceiving him.

45. The Plaintiff has failed to establish by a preponderance of the evidence that, as of the time each advance of money was made, the Defendant appropriated any funds from the Plaintiff with a fraudulent intent.

46. The Plaintiff has failed to establish by a preponderance of the evidence that the Plaintiff suffered the damages for which he has sued as a proximate result of false representations.

47. The indebtedness for which the Plaintiff has sued was already in existence at the time that title to the Properties was transferred to the Plaintiff. Thus, that debt was not "obtained by" any failure by the Defendant to disclose that the transferred Properties were encumbered by a lien to Legacy Housing, Ltd.

48. Though the evidence establishes in some respects that the Defendant may have subsequently misappropriated proceeds from the sale of unidentified properties at prior unspecified times during his business relationship with the Plaintiff, the Plaintiff has wholly failed to establish by a preponderance of the evidence that the Defendant committed specific acts of embezzlement which caused the $174,460 in direct damages for which the Plaintiff has sued.

49. The Defendant knew that, upon the sale of each property that he had acquired with the Plaintiff's funds, his agreement with the Plaintiff entitled the Plaintiff to recoup from the sales proceeds the purchase price which the Plaintiff had advanced to the Defendant in order to acquire the property.

50. The Defendant knew, at the time that he covertly encumbered for the benefit of a third party the Properties which had been acquired with the Plaintiff's funds, such an encumbrance created the possibility that the Plaintiff would be precluded from recouping the advanced purchase price from each of the Properties.

51. The evidence establishes that the encumbrances that the Defendant covertly placed upon the Properties subsequently did, in fact, constitute a proximate cause of the financial losses of which the Plaintiff now complains. However, a demonstration of proximate cause is insufficient to establish that the Defendant inflicted a willful and malicious injury upon the Plaintiff.

52. The Plaintiff has failed to establish by a preponderance of the evidence that, at the time that the Properties were encumbered, the financial loss ultimately inflicted upon the Plaintiff was the only outcome that could have reasonably anticipated by the Defendant under the circumstances.

53. In fact, the Plaintiff introduced little, if any, evidence regarding the circumstances that surrounded the encumbrance of the Properties by the Defendant, the purpose of those encumbrances, the Defendant's financial status at the time of his actions, or the financial value of the Properties and the likelihood that the Plaintiff could recoup his investment despite the encumbrances.

54. The Plaintiff has failed to demonstrate by a preponderance of the evidence that, at the time that the Properties were encumbered, the Defendant's financial circumstances were so dismal that he could not have anticipated an ability to prevent or forestall a foreclosure by Legacy in the near future.

55. The Plaintiff has failed to demonstrate by a preponderance of the evidence that, at the time that the Properties were encumbered, there was no feasible method or course of action involving the sale of the Properties that might have protected the Plaintiff from the loss of his recoupment amounts.

56. The Plaintiff has thus failed to demonstrate by a preponderance of the evidence that, at the time that the Properties were encumbered, the Defendant knew or should have known that injury to the Plaintiff was substantially certain to occur as a result of the encumbrance of the Properties.

57. The Plaintiff failed to present proof sufficient to demonstrate the reasonable and necessary nature of attorney's fees reflected in his proof of claim and sought in this proceeding.

58. While the circumstances demonstrate that the Plaintiff has suffered a significant financial loss that was proximately caused by the conduct, inaction and ineptitude of the Defendant, that fact cannot be permitted to stand in lieu of the required degree of proper proof pertaining to the Defendant's conduct and intentions under these circumstances, particularly in light of the Bankruptcy Code's directive that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor.

59. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 11 U.S.C. §523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. This Court has the authority to enter a final judgment on an unliquidated claim when determining the dischargeability of that debt in a bankruptcy case. *Morrison v. Western Builders (In re Morrison)*, 555 F.3d 473, 478–79 (5th Cir. 2009).

4. Such authority recognized in the Fifth Circuit is consistent with decisions of sister courts of appeal. *See, e.g., Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017–18 (9th Cir.1997); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965–66 (6th Cir.1993); *Abramowitz v. Palmer*, 999 F.2d 1274 (8th Cir.1993); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir.1991).

5. The recognized authority of a bankruptcy court to enter a final judgment on an unliquidated claim when determining the dischargeability of that debt in a bankruptcy case was not impaired by the decision in *Stern v. Marshall*, ––– U.S. ––––, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 -313 (Bankr. N.D. Tex. 2011); *Dragisic v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011).

6. Even if *Stern* had arguably impacted that authority [which it did not],

    > the court would be compelled to follow existing Fifth Circuit precedent as set out in *Morrison* . . . as this court cannot ignore (much less 'overrule') existing binding circuit precedent, even if that precedent is thought to be inconsistent with a later decision by the Supreme Court. Only the circuit itself can overrule its own precedents.

    *Christian v. Kim (In re Soo Bin Kim)*, 2011 WL 2708985, at *2 n.2 (Bankr. W.D. Tex., July 11, 2011), as cited in *Carroll*, 464 B.R. at 313 and *Dietz v. Ford (In re Deitz)*, 469 B.R. 11, 21 (B.A.P. 9th Cir. 2012).

7. The complaint filed by the Plaintiff seeks a determination that the debt which he alleges is owed to him by the Defendant should be excepted from discharge under 11 U.S.C. §523(a)(2)(A), §523(a)(4) and/or §523(a)(6).

8. In seeking to except the debt owing to him from the scope of the discharge granted to the Defendant, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

9. All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[11]  *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

10. However, the Fifth Circuit has noted that there are limits to the maxim that exceptions to dischargeability are to be construed narrowly in favor of the debtor, particularly in situations falling under an exception to dischargeability in a case in which a debtor has committed fraud. *See generally Deodati v. M.M. Winkler & Associates (In the Matter of: M.M. Winkler & Associates),* 239 F.3d 746, 751 (5th Cir. 2001).

*Nondischargeability Under 523(a)(2)(A):  Debt Arising by Fraud, False Pretenses, or False Representation.*

11. The Plaintiff's Complaint seeks a determination that the debt owed to him should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.

12. 11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

13. Section 523(a)(2)(A) encompasses similar but distinct causes of action. Though

---

[11] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

14. The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise ... related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].[13]

15. Because any representation by the Defendant regarding his future fulfillment of his obligations arising under his agreement with the Plaintiff, or the Plaintiff's expectations arising therefrom, pertained to a future event, any such statement cannot be properly characterized as a false representation or a false pretense in this Circuit.

---

[12] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987). Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351(1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi),* 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

[13] While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See Walker v. Davis (In re Davis),* 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003). In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party." *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

16. Thus, the validity of the Plaintiff's claim under §523(a)(2)(A) in this case rests upon sufficient proof that the debt was obtained by actual fraud.

17. To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that:

    (1) the debtor made representations;
    (2) at the time they were made the debtor knew they were false;
    (3) the debtor made the representations with the intention and purpose to deceive the creditor;
    (4) the creditor justifiably relied on such representation; and
    (5) the creditor sustained losses as a proximate result of the representations.

    *Pentecost*, 44 F.3d at 1293, *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

18. It is widely recognized that "[a] promise to perform acts in the future is not a qualifying misrepresentation merely because the promise subsequently is breached." *Woo, Inc. v. Donelson (In re Donelson)*, 410 B.R. 495, 503 (Bankr. S.D. Tex. 2009) (citing *Allison,* 960 F.2d at 484). A breach of contract "is not sufficient to make a debt non-dischargeable, even though there is no excuse for the subsequent breach." *Turbo Aleae Inv., Inc. v. Borschow (In re Borschow)*, 454 B.R. 374, 395 (Bankr. W.D. Tex. 2011) (citing *Bercier*, 934 F.2d at 692), *aff'd,* 467 B.R. 410 (W.D. Tex. 2012).

19. Fraudulent conduct occurring subsequent to the time that an indebtedness is created is irrelevant to the issue of whether the debt was "obtained by false pretenses, a false representation, or actual fraud" within the meaning of §523(a)(2)(A) of the Bankruptcy Code. *Borschow*, 454 B.R. at 401; *ColeMichael Investments, LLC v. Burke (In re Burke)*, 405 B.R. 626, 648 (Bankr. N.D. Ill. 2009) *aff'd,* 436 B.R. 53 (N.D. Ill. 2010); *Batcha v. Forness (In re Forness)*, 334 B.R. 724, 734 (Bankr. M.D. Fla. 2005).

20. Because the Court concludes that the Plaintiff has failed to prove by a preponderance of the evidence that his alleged claim amount was obtained by actual fraud, judgment must be rendered for the Defendant on this §523(a)(2)(A) claim.

*Nondischargeability under § 523(a)(4)*: *Debt Arising From Embezzlement.*

21. 11 U.S.C. §523(a)(4) provides that "A discharge under 11 U.S.C.§ 727 does not discharge an individual from a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

22. "Embezzlement is defined for the purposes of §523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied*, 526 U.S. 1016 (1999).

23. "Embezzlement, however, is not limited to situations in which one person is entrusted with the property of another.  It also applies where . . . a person lawfully obtains property, but then fraudulently appropriates it for his or her own use." *Powers v. Caremark, Inc. (In re Powers)*, 261 Fed. App'x. 719, 723 (5th Cir. 2008).

24. "Given that a debtor has lawful control of the property, embezzlement then requires three elements: (1) appropriation of funds by the debtor; (2) for the debtor's use or benefit; and (3) with fraudulent intent." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 696 (Bankr. E.D. Tex. 2009) *(citing Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 200 (Bankr. S.D. Tex. 2006)).

25. Fraudulent intent is "an intent to deceive another person and thereby induce such other person to transfer, alter or terminate a right with respect to property." *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 778 (Bankr. S.D. Tex. 2008); *Soisson v. Hillebrandt (In re Hillebrandt)*, 2011 WL 2447738 at *20 (Bankr. S.D. Miss., June 15, 2011).

26. "Fraudulent intent may be inferred from the conduct of the Debtor and from circumstances of the situation." *Chizk v. Ramon (In re Ramon)*, 433 B.R. 571, 582 (Bankr. N.D. Tex. 2010).

27. The only debt that could have arisen from an embezzlement by the Defendant related to the alleged misappropriation of sale proceeds from unidentified properties at unspecified times during the existence of the business relationship.

28. However, the particular damages sought to be recovered by the Plaintiff against the Defendant in this adversary proceeding are not derived from any asserted misappropriation of sale proceeds.

29. "A requirement that the creditor prove the damages resulting from the embezzlement is implicit in the embezzlement exception to discharge." *KV Pharmaceutical Co. v Harland (In re Harland)*, 235 B.R. 769, 781 (Bankr. E.D. Pa. 1999) (citing *Homemakers, Inc. v. Salamone (In re Salamone)*, 78 B.R. 74, 77 (Bankr. E.D. Pa. 1987); see also *Brown v. Kuwazaki (In re Kuwazaki)*, 2010 WL 3706004 at *6 (B.A.P. 10th Cir., Sept. 23, 2010) [". . .embezzlement claims are limited to money or property that was used in an unauthorized way . . . [and the Plaintiff's] damages should not include any amounts that actually were used in accordance with the parties' agreement."]; *Hamilton v. Green (In re Green)*, 2012 WL 3028462 at *6 (Bankr. W.D. Mo. July 25, 2012) ["For the debt to be nondischargeable under § 523(a)(4), the creditor must prove the damages resulting from the embezzlement."].

30. Thus, the Plaintiff's request to except the debt allegedly owed to him by the Defendant as a debt arising from embezzlement must be denied.

*Nondischargeability Under §523(a)(6): Debt Arising from Willful and Malicious Injury*

31. The Plaintiff further contends that the debt owed to him should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon him by the Debtor-Defendant.

32. Section 523(a)(6) of the Bankruptcy Code provides that:

    (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

        (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

33. In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed nondischargeable under §523(a)(6).

34. The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

35. As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

36. The "objective substantial certainty" prong "is a recognition of the evidentiary reality that defendants rarely admit malicious intent. A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing In re Vollbracht*, 276 Fed. App'x. 360 (5th Cir. 2007).

37. The Plaintiff has failed to demonstrate by a preponderance of the evidence the existence of a deliberate or intentional injury inflicted upon it by the Defendant.

38. The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant's action to encumber the Properties at that particular time created an objective substantial certainty of harm to the Plaintiff.

39. Thus, the Plaintiff has failed to sustain its burden of proof that any portion of the indebtedness asserted owed to him by the Defendant arose from the infliction of a "willful and malicious injury" as contemplated by §523(a)(6).

## CONCLUSION

40. Because the Court concludes that the Plaintiff, Michael Boyle, has failed to prove by a preponderance of the evidence that the asserted debt owed by Defendant, Brian Berkenbile, was procured by false representations, false pretenses or actual fraud, judgment must be rendered for the Defendant under §523(a)(2)(A).

41. Because the Court concludes that the Plaintiff, Michael Boyle, has failed to prove by a preponderance of the evidence that the asserted debt owed by Defendant, Brian Berkenbile, arose from an embezzlement, judgment must be rendered for the Defendant under §523(a)(4).

42. Because the Court concludes that the Plaintiff, Michael Boyle, has failed to prove by a preponderance of the evidence that the asserted debt arose from a willful and malicious injury inflicted upon him by the Defendant, Brian Berkenbile, judgment must be rendered for the Defendant under §523(a)(6).

43. Thus, all relief requested in the Plaintiff's Complaint in the above-referenced adversary proceeding shall be denied.

44. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

45. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 02/27/2014

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

NOT FOR PUBLICATION